**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>KINGS PEAK ENERGY, LLC<br>EIN: 47-1592615<br><br>    Debtor. | Case No. 17-16046-EEB<br><br>Chapter 11 |

**CHAPTER 11 LIQUIDATING PLAN DATED NOVEMBER 27, 2018, AS**
**IMMATERIALLY AMENDED ON FEBRUARY 12, 2019**

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. Sections l01 et seq., Macquarie Bank Limited, proposes the following *CHAPTER 11 LIQUIDATING PLAN DATED NOVEMBER 27, 2018, AS IMMATERIALLY AMENDED AS OF FEBRUARY 12, 2019*.

Dated:  February 12, 2019

**MARKUS WILLIAMS**
**YOUNG & ZIMMERMANN LLC**

*/s/ James T. Markus*
James T. Markus, #25065
Matthew T. Faga, #41132
Donald D. Allen, #10340
1700 Lincoln Street, Suite 4550
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email jmarkus@markuswilliams.com

And

**KELLY HART & PITRE**
/s/ *Louis M. Phillips*
Louis M. Phillips (La. Bar No. 10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-19
Phone: (225) 381-9643
Fax: (225) 336-9763
Email: louis.phillips@kellyhart.com
*Counsel for Macquarie Bank Limited*

i

# TABLE OF CONTENTS

**ARTICLE I - GENERAL**..........................................................................................5
    1.1    Rules of Interpretation, Computation of Time and Governing Law    5
    1.2    Defined Terms    5

**ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS**..................................15

**ARTICLE III - UNCLASSIFIED CLAIMS**..............................................................15
    3.1    Administrative Expense Claims    15
    3.2    Professional Fees    16
    3.3    Priority Tax Claims    16

**ARTICLE IV - TREATMENT OF CLAIMS AND EQUITY INTERESTS**.......................17
    4.1    Secured Tax Claims (Class 1)    17
    4.2    Secured DG&S Claims (Class 2)    17
    4.3    MBL Secured Claim (Class 3)    17
    4.4    Secured Field Vendor Claims (Class 4)    18
    4.5    Priority Non-Tax Claims (Class 5)    19
    4.6    Suspense Fund Claims (Class 6)    19
    4.7    Gas Proceeds Claims (Class 7)    19
    4.8    Field Vendor Claims (Class 8)    19
    4.9    General Unsecured Claims (Class 9).    20
    4.10    Equity Interests (Class 10)    21

**ARTICLE V - ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS**..21
    5.1    Class Acceptance Requirement    21
    5.2    Deemed Acceptance by Non-Voting Classes    21
    5.3    Elimination of Vacant Classes    21
    5.4    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code    21

**ARTICLE VI - EXECUTORY CONTRACTS AND UNEXPIRED LEASES**.....................21

**ARTICLE VII - MEANS FOR EXECUTION OF THE PLAN**...............................22
    7.1    Assets of Debtor    22
    7.2    Dissolution of Debtor    22
    7.3    Sources of Cash and Plan Distributions    22
    7.4    Management    22
    7.5    Litigation and Adversary Proceedings    23

**ARTICLE VIII - PLAN DISTRIBUTIONS**................................................................23
    8.1    Plan Distributions    23
    8.2    Disbursing Agent    23
    8.3    Allocation of Plan Distributions Between Principal and Interest    24
    8.4    No Postpetition Interest on Claims    24
    8.5    Distribution Record Date    24
    8.6    Delivery of Plan Distributions    24
    8.7    Distribution to Holders of Claims in Classes 4, 8, and 9    25

| | | |
|---|---|---|
| 8.8 | Disputed Claim Reserve Distributions | 25 |
| 8.9 | Disputed Claims; Limitation | 25 |
| 8.10 | Satisfaction of Claims | 25 |
| 8.11 | Manner of Payment Under Plan | 25 |
| 8.12 | De Minimis Cash Distributions | 25 |
| 8.13 | No Distribution in Excess of Amount of Allowed Claim | 25 |
| 8.14 | Withholding and Reporting Requirements | 25 |
| 8.15 | Unclaimed Property | 26 |

**ARTICLE IX - PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND EQUITY INTERESTS** ...................................................................................26

| | | |
|---|---|---|
| 9.1 | Disputed Claims | 26 |
| 9.2 | Allowance of Disputed Claims and Payment of Distribution | 27 |
| 9.3 | Estimation of Disputed Claims for Voting | 27 |
| 9.4 | Preservation of Claims and Rights to Settle Claims | 27 |
| 9.5 | Expenses Incurred On or After the Effective Date Regarding Objections to Claims | 28 |

**ARTICLE X - CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ........................................................................................28

| | | |
|---|---|---|
| 10.1 | Conditions Precedent to Confirmation | 28 |
| 10.2 | Conditions Precedent to the Effective Date | 28 |
| 10.3 | Waiver of Conditions Precedent | 28 |
| 10.4 | Effect of Non-Occurrence of the Effective Date | 29 |

**ARTICLE XI - EFFECT OF CONFIRMATION** ...........................................................29

| | | |
|---|---|---|
| 11.1 | Vesting of Assets of Debtor; Continued Corporate Existence | 29 |
| 11.2 | Dissolution of Reorganized Debtor | 29 |
| 11.3 | Binding Effect | 30 |
| 11.4 | Releases by the Debtor | 30 |
| 11.5 | Releases by Holders of Claims and Other Entities | 31 |
| 11.6 | Exculpation and Limitation of Liability | 32 |
| 11.7 | Injunction | 33 |
| 11.8 | Term of Bankruptcy Injunction or Stays | 34 |
| 11.9 | Termination of Subordination Rights and Settlement of Related Claims | 34 |
| 11.10 | Waiver of Actions Arising Under Chapter 5 of the Bankruptcy Code | 34 |
| 11.11 | Retained Actions | 34 |
| 11.12 | No Discharge | 35 |

**ARTICLE XII - GENERAL PROVISIONS** ....................................................................35

| | | |
|---|---|---|
| 12.1 | Amendments and Modifications | 35 |
| 12.2 | Reservation of Rights/Preservation of Causes of Action | 35 |

**ARTICLE XIII - RETENTION OF JURISDICTION** ..................................................36

**ARTICLE XIV - MISCELLANEOUS PROVISIONS** ..................................................38

| | | |
|---|---|---|
| 14.1 | Payment of Statutory Fees | 38 |
| 14.2 | Incentive and Severance Compensation | 39 |
| 14.3 | Confirmation Order Effective Upon Entry | 39 |
| 14.4 | Substantial Consummation | 39 |
| 14.5 | Expedited Determination of Postpetition Taxes | 39 |

| 14.6 | Modification and Amendments | 39 |
| 14.7 | Additional Documents | 40 |
| 14.8 | Effectuating Documents and Further Transactions | 40 |
| 14.9 | Entire Agreement | 40 |
| 14.10 | Revocation or Withdrawal of the Plan | 40 |
| 14.11 | Severability | 40 |
| 14.12 | Solicitation | 41 |
| 14.13 | Governing Law | 41 |
| 14.14 | Successors and Assigns | 41 |
| 14.15 | Closing of Bankruptcy Case | 41 |
| 14.16 | Document Retention | 41 |
| 14.17 | Conflicts | 41 |
| 14.18 | Service of Documents | 42 |
| 14.19 | Deemed Acts | 43 |
| 14.20 | Waiver or Estoppel | 43 |

# ARTICLE I

# GENERAL

1.1     Rules of Interpretation, Computation of Time and Governing Law

a)     *Rules of Interpretation*: For purposes of the Plan: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document, schedule or exhibit filed, or to be filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified or supplemented; (iv) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (v) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles and paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in Section 102 shall apply; and (viii) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

b)     *Computation of Time*: In computing any period prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply as though the Plan is an order of the Court.

1.2     Defined Terms

1.     <u>Administrative Expense Claim</u>: A Claim for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2), including: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the estate and operating the business of Debtor (including wages, salaries or commissions for services and payments for goods and other services and leased premises); (ii) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331; and (iii) all fees and charges assessed against the estate under chapter 123 of Title 28 United States Code, 28 U.S.C. §§ 1911-1930.

2.     <u>Allowed</u>: When used in connection with a Claim, except as otherwise provided herein: (i) a Claim that has been scheduled by Debtor in its Bankruptcy Schedules as other than a Disputed Claim and as to which a party in interest has not filed a timely objection; (ii) a Claim, proof of which was filed on or before the Claims Bar Date, or filed after such date with leave of Court, to which a timely objection has not been filed to such Claim; (iii) a Claim that has been allowed by a Final Order, or by stipulation as to the amount and nature of Claim executed with Reorganized Debtor on or after the Effective Date; (iv) a Claim relating to a rejected executory contract or unexpired lease as to which a party in interest has not filed a timely objection, or has been allowed by a Final Order, in either case only if a proof of Claim has been

filed within 30 days from the Confirmation Date or has otherwise been deemed timely filed under applicable law; or (v) a Claim that is allowed pursuant to the terms of the Plan.

3.  <u>Avoidance Actions</u>:  Any Cause of Action that is a claim or recovery action pursuant to any Section of chapter 5 of the Bankruptcy Code, whether or not asserted or pending on the Confirmation Date or such earlier date as may have been established by Court order.

4.  <u>Ballot</u>:  The form distributed to each Holder of an Impaired Claim that is entitled to vote to accept or reject the Plan, on which (i) such Holder shall indicate acceptance or rejection of the Plan and (ii) may check the Release Opt Out Box..

5.  <u>Bankruptcy Case</u>:  This bankruptcy case, # 17-16046-EEB, pending in the United States Bankruptcy Court, District of Colorado.

6.  <u>Bankruptcy Code</u>:  The Bankruptcy Reform Act of 1978, Title 11 of the United States Code, as amended from time to time, as set forth in §§ 101 et seq. of Title 11 of the United States Code, and applicable portions of Titles 18 and 28 of the United States Code. All references to "Section" are references to sections of the Bankruptcy Code.

7.  <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Debtor's case, promulgated under 28 U.S.C. § 2075 and the Local Rules of the Court.

8.  <u>Bankruptcy Schedules</u>:  The schedules of assets and liabilities filed by Debtor with the Court pursuant to Bankruptcy Rule 1007, as such schedules may be amended or supplemented from time to time pursuant to Bankruptcy Rule 1009.

9.  <u>Business Day</u>:  Any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

10.  <u>Cash</u>:  Legal tender of the United States, including amounts on deposit at financial institutions in checking accounts, money market accounts and the like.

11.  <u>Causes of Action</u>:  Any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively by the Debtor, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law, unless specifically released under the Plan.  For the avoidance of doubt, "Cause of Action" includes: (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Equity Interests; (iii) any claim or recovery action pursuant to Section 362 or any Section of chapter 5 of the Bankruptcy Code; (iv) any equitable remedy, including, without limitation, any claim for equitable subordination, equitable disallowance, or unjust enrichment; (v) any claim or defense

including fraud, mistake, duress, and usury, and any other defenses set forth in Section 558; and (vi) any cause of action or claim arising under any state or foreign fraudulent transfer law.

12.     Claim: A claim (as defined in Section 101(5)) against Debtor, including: (i) any right to payment from Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmeasured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmeasured, disputed, undisputed, secured or unsecured. "Claim" shall not include unmatured or unearned interest as of the Petition Date on the amount of any Claim except as permitted by the Bankruptcy Code or except as expressly provided otherwise in the Plan.

13.     Claims Bar Date: November 6, 2017, the bar date for filing proofs of Claim as established by Court order; and any supplemental bar dates set by subsequent Court order.

14.     Class: A category of holders of Claims or Equity Interests as set forth in Article III of the Plan.

15.     Confirmation:  Approval of the Plan through issuance by the Court of the Confirmation Order.

16.     Confirmation Date: The date on which the Court enters the Confirmation Order.

17.     Confirmation Hearing: The hearing to be held by the Court to consider confirmation of the Plan under Section 1129, as such hearing may be continued from time to time.

18.     Confirmation Order: The order of the Court confirming the Plan pursuant to Section 1129, and granting other related relief, in form and substance acceptable to MBL.

19.     Court: The United States Bankruptcy Court for the District of Colorado or any other court of the United States with authority over Debtor's case.

20.     CRO: Debtor's Chief Restructuring Officer, F. Robert Tiddens, or his replacement in the event of his inability to serve, to be chosen by MBL.

21.     Debtor: Kings Peak Energy, LLC, a Nevada limited liability company.

22.     Disallowed: With respect to any Claim or Equity Interest, a Claim or Equity Interest or any portion thereof that is not Allowed and (i) has been disallowed by a Final Order, (ii) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Court, (iii) is not listed in the Schedules and as to which no proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Court, (iv) has been withdrawn by agreement of the Debtor and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

23.     Disbursing Agent: The Reorganized Debtor acting through the CRO.

24.     Disclosure Statement: The *DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 LIQUIDATING PLAN DATED NOVEMBER 27, 2018 AS IMMATERIALLY* AMENDED *ON FEBRUARY 12, 2019, FILED BY MACQUARIE BANK LIMITED*, proposed by MBL, to be submitted in support of the Plan, as amended, supplemented, or modified from time to time, that is or will be prepared, filed and distributed in accordance with Sections 1125 and 1126(b) and Bankruptcy Rule 3018 and/or other applicable law.

25.     Disputed Claim: Any Claim: (i) listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent and with respect to which no proof of claim has been filed; or (ii) as to which Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.  For purposes of Allowance (but not voting), a Claim asserted by a Holder in an amount different from the amount listed upon Exhibits A through E, or a Claim asserted that is not listed upon Exhibits A through E is deemed a Disputed Claim for purposes of Plan Distributions, as objections to such Claims will be filed unless Allowance is resolved by agreement of the Reorganized Debtor and such Claimant, with the consent of MBL or, with respect to objections to Class 4 or 8 Claims, the agreement of MBL and such Claimant.

26.     Disputed Claims Cash Reserve: A reserve for a portion of the Plan Distributions to the Holders of Claims in Classes 4, 8 and 9 to be held by the Disbursing Agent for the benefit of the Holders of Disputed Claims in Classes 4, 8 and 9 in an amount equal to the Plan Distributions such Holders of Disputed Claims would be entitled to receive on the Distribution Date if such Disputed Claims were Allowed in their full amounts on such date.

27.     Distribution Date: The later of the Initial Distribution Date and the date upon which a Disputed Claim becomes an Allowed Claim.

28.     Distribution Record Date:  The record date for purposes of making Plan Distributions on account of Allowed Claims, which date shall be the date of the commencement of the Confirmation Hearing.

29.     Effective Date: The first Business Day after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect, (ii) the conditions to the effectiveness of the Plan specified in Article X have been satisfied or waived (in accordance with Article 10.3), and (iii) MBL declares the Plan effective.

30.     Entity: The term "entity" as defined by Section 101(15).

31.     Equity Interest: Any legal or beneficial equity interest in Debtor as of the Petition Date, including all membership interests, together with any warrants, options or contract rights to purchase or acquire such interests from any Person at any time.

32.     Estate: The bankruptcy estate of Debtor, including without limitation all property of the Estate under Section 541.

33.     <u>Field Vendors</u>: Those Entities, excluding Proven, who performed services and field work, or provided products and equipment prior to the Petition Date for Proven or Debtor at the Properties.

34.     <u>Field Vendor Claim</u>: A Claim, other than a Field Vendor Lien Claim, held by a Field Vendor, including such Claims (i) as would allow the Holder thereof, under Section 362(b)(3), to file a Lien under applicable non-bankruptcy law, and (ii) that are identified on **Exhibit A**.

35.     <u>Field Vendor Lien Claim</u>: Each of the alleged Secured Claims of the Field Vendors listed on **Exhibit B**, arising from the filing of a Lien purporting to create a Lien in, to or upon the Properties under applicable non-bankruptcy law, including:

(i)     under Title 29 of the Wyoming statutes and meeting the following requirements: (i) the Lien is timely perfected under Title 29 of the Wyoming statutes; (ii) the commencement of any construction work or repair of the premises or property is claimed to predate the perfection of the MBL Secured Claim pursuant to § 29-1-402(c) of the Wyoming statutes; and (iii) all work performed or materials furnished for which the holder is asserting the Claim is considered as having been done under the same contract pursuant to § 29-1-403 of the Wyoming statutes; or

(ii)    Under Title 38 of the Utah Statutes and meeting the following requirements: (i) the Lien is timely perfected under Title 29 of the Utah statutes; and    (ii) the commencement of any construction work or repair of the premises or property is claimed to predate the perfection of the MBL Secured Claim pursuant to § 30-10-107(3) of the Utah statutes.

36.     <u>Final Decree</u>: The order to be issued by the Court under Bankruptcy Rule 3022.

37.     <u>Final Order</u>: An order or judgment entered by the Court or other court of competent jurisdiction that:  (i) is conclusive of all matters; (ii) has not been reversed, stayed, or revoked; and (iii) is effective.

38.     <u>Gas Proceeds Claims</u>: Those Claims of certain working interest holders and overriding royalty interest holders and taxing authorities related to the Gas Proceeds Fund and identified on **Exhibit C**.

39.     <u>Gas Proceeds Fund:</u> The Cash funds in the approximate amount of $66,000, established prepetition and held by agreement of MBL and Debtor in Debtor's project account on account of the Gas Proceeds Claims which shall be used to pay the Gas Proceeds Claims.

40.     <u>General Unsecured Claim</u>: An Unsecured Claim, including those listed on **Exhibit D**, which shall be treated within the treatment of Class 9 Claims within Article 4.9 of the Plan.

41.     <u>General Unsecured Claim Fund</u>: Cash in the amount of $100,000 carved out from the MBL Collateral for purposes of making Plan Distributions on a Pro Rata basis to the Holders of Class 9 Allowed General Unsecured Claims, subject to the limitations of Article 4.9 of the Plan.

42.     <u>Holder</u>: The beneficial holder of any Claim or Equity Interest.

43.     <u>Impaired</u>: With respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is impaired within the meaning of Section 1124.

44.     <u>Incentive and Severance Compensation</u>: The compensation payable under the Plan with the consent of MBL out of the MBL Collateral to the CRO in an amount <u>up to</u> Six Hundred Thousand and No/100ths Dollars ($600,000) (as approved by the Court).

45.     <u>Initial Distribution Date</u>: The date which is no more than thirty (30) days after the Effective Date.

46.     <u>Lien</u>: A lien, security interest or charge against property to secure payment of a debt or performance of an obligation, whether obtained by consensual means or by judgment, levy, sequestration, or other legal or equitable process or proceeding, and including a lien as defined in Section 101(37).

47.     <u>MBL</u>:  Macquarie Bank Limited.

48.     <u>MBL Collateral</u>: The Properties subject to the MBL Lien, including without limitation the Sale Proceeds, and any and all bonds and proceeds therefrom excluding only the Specified Bonds and Bond Funds as defined in the Proven Settlement.

49.     <u>MBL Lien</u>:  The security interests in, to and upon the MBL Collateral securing the MBL Secured Claim arising under, in connection with or pursuant to:  (i) the MBL Loan Documents, including without limitation the following, all dated as of November 3, 2014: (1) Deed of Trust, Mortgage, Assignment of Production, Security Agreement and Financing Statement recorded on November 14, 2014, in the land records of Uinta County, Wyoming, at Book 1017, Page 848; (2) Deed of Trust, Mortgage, Assignment of Production, Security Agreement and Financing Statement recorded on November 20, 2014, in the land records of Summit County, Utah; (3) Security Agreement; (4) UCC Financing Statement filed November 6, 2014, at filing number 2014028633-4 in the Office of the Secretary of State of Nevada; and (5) UCC Financing Statement filed November 6, 2014 at filing number 2014028634-6, in the office of the Secretary of State of Nevada; (ii) the Interim Order Authorizing Debtor's Use of Cash Collateral entered July 17, 2017 (Dkt.# 37), and all subsequent orders authoring Debtor's use of cash collateral, including without limitation those orders entered August 8, 2017 (Dkt.# 96), September 8, 2017 (Dkt.# 118), October 3, 2017 (Dkt.# 173), October 17, 2017 (Dkt. # 187); November 14, 2017 (Dkt.# 208); December 13, 2017 (Dkt.# 219); February 12, 2018 (Dkt.# 241), March 12, 2018 (Dkt.# 274), April 6, 2018 (Dkt.# 294), May 14, 2018 (Dkt.# 314), June 8, 2018 (Dkt.# 376), July 11, 2018 (Dkt.# 414), October 11, 2018 (Dkt.# 474), and November 27, 2018 (Dkt.# 519), as the foregoing have been or may be amended, supplemented or modified, together with all orders entered thereafter until and through the Effective Date.

50.     <u>MBL Loan Documents</u>: The documents evidencing that certain credit facility from MBL to Debtor providing for a term loan of up to $75,000,000, and including without limitation the Credit Agreement, Promissory Note, Guaranty, NPI Conveyance, Pledge Agreement, Mortgages, Security Agreement, Financing Statements and Fixture Filings, all dated as of November 3, 2014, as such documents may have been amended or supplemented from time to time, and including as well the Disgorgement Agreement, but excluding the Eighth Amendment to Credit Agreement which evidences the DIP Loan.

51.     <u>MBL Secured Claim</u>: The Claim of MBL under the MBL Loan Documents and evidenced by proof of claim # 22 that is secured by the MBL Lien in, to and upon the MBL Collateral, which Claim shall under the Plan (i) be Allowed as of the Petition Date in the amount of $18,804,601.10, and (ii) include as part of the Allowed MBL Secured Claim any and all interest on such Claim, and any reasonable fees, costs, or charges provided for under the MBL Loan Documents and MBL Lien to the fullest extent Allowable under Section 506(b).

52.     <u>Oil and Gas Properties</u>: The oil and gas properties, and assets owned by Debtor as of the Petition Date or acquired thereafter, including without limitation those oil and gas properties, lands, leases and working interests located in Summit County, Utah and Uinta County, Wyoming, including 30 active, inactive and disposal wells and all equipment, infrastructure, tools, production, proceeds and other property associated therewith.

53.     <u>Operating Administrative Expense Claim</u>:  A type of Administrative Expense Claim, being an operating expense of Debtor incurred by the Debtor after the Petition Date but prior to the Effective Date in the ordinary course of its operations, such as payables for goods or services.

54.     <u>Person</u>: This term has the meaning set forth in 11 U.S.C. § 101(41).

55.     <u>Petition Date</u>: June 29, 2017.

56.     <u>Plan</u>: This *CHAPTER 11 LIQUIDATING PLAN DATED NOVEMBER 27, 2018, AS IMMATERIALLY AMENDED ON FEBRUARY 12, 2019*, proposed by MBL, either in its present form or as it may be supplemented, amended or modified in accordance with the Bankruptcy Code.

57.     <u>Plan Distribution</u>: A payment or distribution under the Plan to Holders of Allowed Claims.

58.     <u>Priority Tax Claims</u>: A Claim of a governmental unit of the kind specified in Section 507(a)(8).

59.     <u>Priority Non-Tax Claims</u>: A Claim entitled to priority under Section 507(a), other than Claims entitled to priority under Sections 507(a)(2) and (8).

60.     <u>Professional</u>: An Entity (i) employed in the Bankruptcy Case pursuant to Sections 327, 328, 363, or 1103 or otherwise, or (ii) seeking or awarded compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to Section 503(b)(4).

61.     <u>Properties</u>: The Oil and Gas Properties, and assets of any kind, tangible or intangible owned by Debtor as of the Petition Date or acquired thereafter, including without limitation the Sale Proceeds.

62.     <u>Pro Rata</u>: As applicable, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

63.     <u>Proven</u>: Proven Petroleum, Inc., the former contract operator for Debtor.

64.     <u>Proven Settlement</u>: The settlement among Proven, PetCon, John Teff, MBL, and Debtor, submitted to the Court for approval on October 26, 2018 (See Dkt. # 489 on the docket of the Bankruptcy Case), the terms of which are incorporated into and ratified by the Plan, and under which Proven shall have an Allowed General Unsecured Claim in the amount of $75,000.

65.     <u>Quarterly UST Fees</u>: Post-confirmation quarterly fees owing to the United States Trustee Program pursuant to 28 U.S.C. § 1930(a)(6) (as amended under Public Law 104-99 signed into law on January 27, 1999).

**66.     <u>Released Parties</u>: Collectively, and each solely in its capacity as such: (i) the Debtor and the Estate; (ii) the CRO; (iii) the Reorganized Debtor; (iv) MBL; (v) all Persons engaged or retained by the parties listed in (i) through (iv) of this definition in connection with the Bankruptcy Case (including in connection with the preparation of any analyses relating to the Plan and the Disclosure Statement); (vi) any and all direct and indirect affiliates, officers, directors, partners, employees, members, managers, members of boards of directors or managers, advisory board members, direct and indirect sponsors, managed accounts and funds, principals, shareholders, advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, arrangers, professionals, investment managers, fund advisors, and representatives of each of the foregoing Persons and their respective affiliates (whether current or former, in each case, in his, her, or its capacity as such), together with their respective successors and assigns; and (vii) all Releasing Parties.**

**67.     <u>Releasing Parties</u>: Collectively, and each solely in its capacity as such: (i) each Released Party; (ii) each Holder of a Claim that either (A) votes to accept the Plan, (B) is conclusively deemed to have accepted the Plan, or (C) receives a Ballot but abstains from voting on the Plan and does not check the appropriate box on such Holder's timely submitted Ballot to indicate such Holder opts out of the releases set forth in Article 11.5 of the Plan ("<u>Release Opt Out Box</u>"); (iii) each Holder of a Claim entitled to vote who votes to reject the Plan and does not check the Release Opt Out Box on such Holder's timely submitted Ballot to indicate such Holder opts out of the releases set forth in Article 11.5 of the Plan; (iv) each Holder of a Claim or Equity Interest deemed to have rejected the Plan but does not send a notice to the Debtor to opt out of the releases set forth in Article 11.5 of the Plan; (v) all Persons releasing claims or being released from claims under the Proven**

**Settlement and the Soliz Energy Settlement; and (vi) all other Holders of Claims and Equity Interests to the extent permitted by law.**

68.   Reorganized Debtor: The Debtor upon and after the Effective Date of the Plan, pending the winding up of the Debtor and Reorganized Debtor as provided for under the Plan after the Effective Date.

69.   Sale Order: The order of the Court approving the sale of the Oil and Gas Properties pursuant to Section 363 to Transworld (entered on the docket of the record of this Bankruptcy Case on June 6, 2018 as Dkt.# 369).

70.   Sale Proceeds: The proceeds of the TW Sale received by Debtor.

71.   Secured AB Services Claim:  The purported Secured Field Vendor Claim of A.B. Services, Inc.

72.   Secured Claim: A Claim (i) that is secured by a Lien on property in which Debtor's estate has an interest, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under Section 553 or avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Claim holder's interest in the estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a), or (ii) Allowed under the Plan as a Secured Claim.

73.   Secured DG&S Claim: The purported Secured Claim of Davis Graham, & Stubbs.

74.   Secured Industrial Horsepower Claim:  The purported Secured Field Vendor Claim of Industrial Horsepower, Inc.

75.   Secured JD Contract Claim: The purported Secured Field Vendor Claim of JD Contract Services.

76.   Secured Loger Water Claim:  The purported Secured Field Vendor Claim of Loger Water Service, Inc.

77.   Secured NEC Claim:  The purported Secured Field Vendor Claim of NEC Electric, Inc.

78.   Secured Big Pee Claim:  The purported Secured Field Vendor Claim of Big Pee Industries, Inc.

79.   Secured Perry Brothers Claim:  The purported Secured Field Vendor Claim of Perry Brothers Oilfield Services.

80.   Secured Tax Claim: A Secured Claim of a governmental unit arising as a result of a statutory Lien in taxable property of Debtor.

81.     <u>Secured Terra Firma Claim</u>:  The purported Secured Field Vendor Claim of Terra Firma Grading, LLC.

82.     <u>Secured Wyoming DOR Claim</u>: The Secured Tax Claim of the State of Wyoming, Department of Revenue.

83.     <u>Soliz</u>:  Federico Soliz III.

84.     Soliz Energy:  Soliz Energy LLC, a Texas limited liability company.

85.     <u>Soliz Energy Settlement</u>:   The settlement among MBL, Debtor, Soliz Energy and Soliz, represented by that certain Settlement and Release Agreement submitted to the Court for approval on February _, 2019 (See Dkt. # ___ on the docket of the Bankruptcy Case), the terms of which are incorporated into and ratified by the Plan.  If the Approval Condition as defined in the Soliz Energy Settlement is not met:  (a) Soliz Energy and Soliz, shall retain the Soliz Energy Administrative/Lien Claims and the Soliz Admin Claims (as defined in the Soliz Energy Settlement) against the Debtor, the Estate and the Reorganized Debtor, with all other claims described therein as Soliz Energy and Soliz Released Claims being released; (b) Debtor, the Estate and the Reorganized Debtor shall retain all defenses and objections thereto; and (c) for all other purposes Soliz Energy and Soliz and the Soliz Releasing Parties as defined in the Soliz Energy Settlement shall be Releasing Parties and Released Parties under the Plan.

86.     <u>Suspense Fund</u>: That Cash fund in the approximate amount of $84,000, established prepetition and held by agreement of MBL and Debtor in Debtor's project account on account of the Suspense Fund Claims (the payment of which was assumed by Transworld in the TW Sale), which shall constitute part of the MBL Collateral, free and clear of the Suspense Fund Claims.

87.     <u>Suspense Fund Claims</u>:  Claims of working interest holders and overriding royalty interest holders related to the Suspense Fund and identified on **<u>Exhibit E</u>**.

88.     <u>Transworld</u>: TOC Oil, Inc., the purchaser of the Oil and Gas Properties through the TW Sale.

89.     <u>TW Sale</u>:  That sale of the Oil and Gas Properties approved by the Sale Order.

90.     <u>Unimpaired</u>: With respect to any Claim or Equity Interest, or a Class of Claims or Equity Interests, that is unimpaired within the meaning of Section 1124.

91.     <u>Unsecured Claim</u>: Any Claim against Debtor that is not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Suspense Fund Claim, Gas Proceeds Claim or Field Vendor Claim, including any Claims arising from the rejection of executory contracts and/or unexpired leases, and any deficiency Claims.

92.     <u>U.S. Trustee</u>: The United States Trustee for the District of Colorado.

93.   <u>Wind-Up Amount</u>:   The sum of $25,000 to be carved out of the MBL Collateral for use after the Confirmation Date to wind up the affairs of the Debtor through issuance of the Final Decree and order closing this Bankruptcy Case and subsequent dissolution of the Debtor as Reorganized Debtor.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(l), except for all Administrative and Priority Tax Claims, which are not classified pursuant to Section 1123(a)(1) and are not entitled to vote on the Plan.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class.

The classification of Claims and Equity Interests pursuant to the Plan is as follows:

| Class | Name | Status | Voting Rights |
|-------|------|--------|---------------|
| Class 1 | Secured Tax Claims (including the Secured Wyoming DOR Claim) | Unimpaired | No |
| Class 2 | Secured DG&S Claim | Unimpaired | No |
| Class 3 | MBL Secured Claim | Impaired | Yes |
| Class 4 | Secured Field Vendor Claims – the Secured AB Services Claim, the Secured Industrial Horsepower Claim, the Secured Terra Firma Claim, the Secured Perry Brothers Claim, the Secured Loger Water Claim, the Secured JD Contract Claims, the Secured Big Pee Claim, and the Secured NEC Claim | Impaired | Yes |
| Class 5 | Priority Non-Tax Claims | Unimpaired | No |
| Class 6 | Suspense Fund Claims | Unimpaired | No |
| Class 7 | Gas Proceeds Claims | Unimpaired | No |
| Class 8 | Field Vendor Claims | Impaired | Yes |
| Class 9 | General Unsecured Claims | Impaired | Yes |
| Class 10 | Equity Interests | Impaired | No |

# ARTICLE III

## UNCLASSIFIED CLAIMS

3.1   <u>Administrative Expense Claims</u>.   In accordance with Section 1123(a)(1), Administrative Expense Claims are not designated as a Class and are not entitled to vote. Unless otherwise previously paid or agreed, and other than Allowed Operating Administrative Expense Claims, all Administrative Expense Claims, including Incentive and Severance Compensation shall receive payment in full (unless previously paid in full pursuant to Court orders), by the

Disbursing Agent in Cash on the later of (i) the Effective Date, or (ii) within twenty (20) Business Days after the date the Administrative Expense Claim becomes an Allowed Claim. Post-Confirmation Allowed Operating Administrative Expense Claims will be paid fully and in cash in the ordinary course of business by Debtor in accordance with any agreed payment terms applicable to such Claim, without the Holder of any Operating Administrative Expense Claim to be required to file such Claim. All motions and applications seeking allowance of Administrative Expense Claims, other than Operating Administrative Expense Claims, shall be filed within thirty (30) days after the Effective Date or shall be deemed disallowed and forever barred. Following the Effective Date the Reorganized Debtor may, with the consent of MBL, object (or continue prosecution of objections) to Allowance of any Administrative Expense Claim. MBL shall otherwise be the only Person with standing to object (or continue prosecution of objections) to Allowance of Administrative Expense Claims. The Reorganized Debtor, through the CRO shall provide MBL with information and such access to personnel as need by MBL, subject to applicable privilege(s), for such objections, if any.

3.2    Professional Fees.

(a)    *Final Fee Applications*. Each Professional requesting compensation pursuant to Sections 327, 328, 330, 331, 363, 503(b), or 1103 for services rendered in connection with the Bankruptcy Case before the Effective Date shall (i) file with the Court, and serve on the Reorganized Debtor and MBL (as well as all other Persons and Entities as required by the Bankruptcy Rules and the Court), an application for allowance of final compensation and reimbursement of expenses in the Bankruptcy Case on or before the thirtieth (30th) day following the Effective Date, and (ii) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules and any prior orders of the Court in the Bankruptcy Case, be paid in full, in Cash, in such amounts as are Allowed.

(b)    *Ordinary Course Professional Fees and Expenses*. The immediately preceding paragraph shall not affect any professional-service Entity that is permitted to receive, and the Debtor is permitted to pay without seeking further authority from the Court, compensation for services and reimbursement of professional fees and expenses in the ordinary course of business (and in accordance with any relevant prior order of the Court), the payments for which may continue notwithstanding the occurrence of Confirmation of the Plan.

(c)    *Post-Effective Date Fees and Expenses*. From and after the Effective Date, the Reorganized Debtor may, upon submission of appropriate documentation and in the ordinary course of business, pay the post-Effective Date charges incurred by the Reorganized Debtor for any Professional's fees, disbursements, expenses, or related support services without application to or approval from the Court. On the Effective Date, any requirement that Professionals comply with Sections 327 through 331 and in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for fees and charges incurred from and after the Effective Date in the ordinary course of business without any notice to or approval of the Court, but subject to the approval of MBL.

3.3    Priority Tax Claims. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax

Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Claim, Cash equal to the unpaid amount of such Allowed Priority Tax Claim on the latest of (i) the Effective Date or as soon thereafter as reasonably practicable; (ii) twenty (20) days after the date on which such Priority Tax Claim becomes Allowed; (iii) the date on which such Priority Tax Claim becomes due and payable; and (iv) such other date as may be mutually agreed to by and among such Holder and the Debtor or the Reorganized Debtor and MBL.

## ARTICLE IV

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1     Secured Tax Claims (Class 1)

(a)     *Classification*.   Class 1 consists of all Secured Tax Claims, including the Secured Wyoming DOR Claim.

(b)     *Treatment*.  Except to the extent the Holder of a Class 1 Allowed Claim has agreed to a different treatment of such Claim, Reorganized Debtor shall pay the Allowed Secured Tax Claims in full in Cash from a carve-out from the MBL Collateral, on the later of (i) the Initial Distribution Date, or (ii) within twenty (20) business days after the date the Secured Tax Claim becomes an Allowed Claim.

(c)     *Impairment and Voting*.   Class 1 is Unimpaired.   Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to Section 1126(f), and accordingly are not entitled to vote to accept or reject the Plan.

### 4.2     Secured DG&S Claims (Class 2)

(a)     *Classification*.   Class 2 consists of the Secured Claim of Davis, Graham & Stubbs LLP.

(b)     *Treatment*.  Except to the extent the Holder of the Class 2 Allowed Claim has agreed to a different treatment of such Claim, Davis, Graham & Stubbs LLP may apply its retainer against the Class 2 Claim on the later of (i) the Initial Distribution Date, or (ii) within twenty (20) business days after the date the Claim of Davis, Graham & Stubbs LLP becomes an Allowed Claim.

(c)     *Impairment and Voting*.   Class 2 is Unimpaired.   Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) and accordingly are not entitled to vote to accept or reject the Plan.

### 4.3     MBL Secured Claim (Class 3)

(a)     *Classification*.  Class 3 consists of the MBL Secured Claim.

(b)     *Treatment*.  Except to the extent the Holder of a Class 3 Allowed Claim has agreed to a different treatment of such Claim, Reorganized Debtor shall pay to MBL on the Initial Distribution Date the MBL Collateral, less the portion thereof proposed under the Plan to be provided for and paid after Allowance to: (i) Administrative Expense Claims

including Professional Administrative Expense Claims and the Incentive and Severance Compensation; (ii) Class 1, 4, 5, 8 and 9 Claims; and (iii) the KPE Wind-Up Amount.  Upon completion of the payment of all Plan Distributions and the dissolution of the Reorganized Debtor, MBL shall without further action on its part be deemed to be the owner of any Cash or property of the Reorganized Debtor remaining, and shall receive all such Cash and property immediately upon such dissolution.  MBL shall retain the MBL Lien until the MBL Secured Claim is paid in full, except with respect to the funds used for the payment of Allowed Claims as provided for in the Plan.

(c)     *Impairment and Voting*.  Class 3 is Impaired.  The Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.4     Secured Field Vendor Claims (Class 4)

(a)     *Classification*.  Class 4 consists of the Secured Field Vendor Claims, including the Secured AB Services Claim, the Secured Industrial Horsepower Claim, the Secured Terra Firma Claim, the Secured Perry Brothers Claim, the Secured Loger Water Claim, the Secured JD Contract Claim, the Secured Big Pee Claim, and the Secured NEC Claim.

(b)     *Treatment*.  Except to the extent the Holder of a Class 4, Allowed Claim has agreed to a different treatment of such Claim, Reorganized Debtor shall pay Class 4 Claims in Cash from a carve-out from the MBL Collateral **the lesser of** a Pro Rata portion of $596,624.13  ("Class 4 Cap Amount") or the full principal amount of the Allowed Secured Field Vendor Claims, which payments shall be made on the Distribution Date in accordance with the Plan.  In the event any Holder of a Class 4 Claim objects to Confirmation ("Class 4 Objector") or Class 4 votes to reject the Plan ("Class 4 Rejection"), the consent of MBL to payment (i) of any Claim of a Class 4 Objector or (ii) to any of the Holders of Class 4 Claims in the event of a Class 4 Rejection shall, without further action of any Person or the Court, be deemed revoked.  If the Plan is Confirmed despite the objection of any Class 4 Objector, each such Class 4 Objector's Claim shall be a Disputed Claim and such Holder shall receive no Plan Distribution or any other property under the Plan unless and until the Court determines by Final Order not subject to appeal or further review that (1) such Class 4 Claim is an Allowed Claim and (2) the Lien securing such Allowed Class 4 Claim is conclusively determined to rank in priority over the MBL Lien (each a "Priority Allowed Secured Field Vendor Claim").  In the event of a Class 4 Rejection, no Holders of Class 4 Claims shall receive a Plan Distribution or any other property under the Plan unless such Holder is determined to Hold a Priority Allowed Secured Field Vendor Claim.  If the Plan is Confirmed notwithstanding the objection by a Class 4 Objector or a Class 4 Rejection, the Holders of Priority Allowed Secured Field Vendor Claim shall receive payment on the Distribution Date of an amount equal to the principal balance as of the Petition Date of their Priority Allowed Secured Field Vendor Claims.

(c)     *Impairment and Voting*.  Class 4 is Impaired.  The Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

4.5     Priority Non-Tax Claims (Class 5).

(a)     *Classification*.  Class 5 consists of all Priority Non-Tax Claims, of which the Debtor believes there are none.

(b)     *Treatment*.  Except to the extent any Holder of a Class 5 Allowed Claims has agreed to a different treatment of such Claim, Reorganized Debtor shall pay the Allowed Priority Non-Tax Claims in full in Cash from a carve-out from the MBL Collateral, on the Distribution Date.

(c)     *Impairment and Voting*.  Class 5 is Unimpaired.  The Holders of Claims in Class 5 are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) and accordingly are not entitled to vote to accept or reject the Plan.

4.6     Suspense Fund Claims (Class 6).

(a)     *Classification*.  Class 6 consists of all Suspense Fund Claims.

(b)     *Treatment*.  The Suspense Fund Claims were assumed by Transworld through the TW Sale and Transworld is holding funds equal to the Suspense Funds for payment of the Suspense Fund Claims.

(c)     *Impairment and Voting*.  Class 6 is Unimpaired.  The Holders of Claims in Class 6 are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) and accordingly are not entitled to vote to accept or reject the Plan.

4.7     Gas Proceeds Claims (Class 7).

(a)     *Classification*.  Class 7 consists of all Gas Proceeds Claims.

(b)     *Treatment*.  Except to the extent the Holder of a Class 7 Allowed Claim has agreed to a different treatment of such Claim, Reorganized Debtor shall pay Class 7 Claims in Cash from the Gas Proceeds Fund, on the Distribution Date.  Debtor and Reorganized Debtor, with Consent of MBL, reserve the right to make payment prior to Confirmation on the basis that the Gas Proceeds Claims are amounts due under assumed executory contracts or unexpired leases that have been assigned to Transworld.

(c)     *Impairment and Voting*.  Class 7 is Unimpaired.  The Holders of Claims in Class 7 are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) and accordingly are not entitled to vote to accept or reject the Plan.

4.8     Field Vendor Claims (Class 8).

(a)     *Classification*.  Class 8 consists of all Field Vendor Claims.

(b)     *Treatment*.  Except to the extent the Holder of a Class 8 Allowed Claim has agreed to a different treatment of such Claim, Reorganized Debtor shall pay Class 8 Claims in Cash from a carve-out from the MBL Collateral **the lesser of** a Pro Rata portion of

$540,386.10 ("Class 8 Cap Amount") or the full principal amount of the Allowed Secured Field Vendor Claims, which payments shall be made on the Distribution Date in accordance with the Plan. In the event any Holder of a Class 8 Claim objects to Confirmation ("Class 8 Objector") or Class 8 votes to reject the Plan ("Class 8 Rejection"), the consent of MBL to payment (i) of any Claim of a Class 8 Objector or (ii) to any of the Holders of Class 8 Claims in the event of a Class 8 Rejection shall, without further action of any Person or the Court, be deemed revoked. If the Plan is Confirmed despite the objection of any Class 8 Objector, each such Class 8 Objector's Claim shall be a Disputed Claim and such Holder shall receive no Plan Distribution or any other property under the Plan unless and until the Court determines that such Claim is a Priority Allowed Secured Field Vendor Claim entitled to treatment as a Class 4 Claim. In the event of a Class 8 Rejection, Holders of Class 8 Claims shall receive no Plan Distributions or any other property under the Plan unless and until the Court determines that such Claim is a Priority Allowed Secured Field Vendor Claim entitled to treatment as a Class 4 Claim. If the Plan is Confirmed notwithstanding the objection by a Class 8 Objector or a Class 8 Rejection, those Holders determined to Hold Priority Allowed Secured Field Vendor Claims shall receive payment on the Distribution Date of an amount equal to the principal balance as of the Petition Date of their Priority Allowed Secured Field Vendor Claims.

(c)     *Impairment and Voting*. Class 8 is Impaired. The Holders of Claims in Class 8 are entitled to vote to accept or reject the Plan.

4.9     General Unsecured Claims (Class 9).

(a)     *Classification*. Class 9 consists of all General Unsecured Claims.

(b)     *Treatment*. Except to the extent the Holder of a Class 9 Allowed Claim has agreed to a different treatment of such Claim, Reorganized Debtor shall pay the Holders of Allowed General Unsecured Claims a Pro Rata share of the General Unsecured Claims Fund in full satisfaction and discharge of the Allowed General Unsecured Claims, which payments shall be made on the Distribution Date in accordance with the Plan. In the event any Holder of a Class 9 Claim objects to Confirmation ("Class 9 Objector") or Class 9 votes to reject the Plan ("Class 9 Rejection"), the consent of MBL to payment (i) of any Claim of a Class 9 Objector or (ii) to the Holders of Class 9 Claims in the event of a Class 9 Rejection shall, without further action on the part of any person or the Court, be deemed revoked. If the Plan is Confirmed despite the objection of any Class 9 Objector such Class 9 Objector's Claim shall be a Disputed Claim, such Holders shall receive no Plan Distributions or any other property under the unless and until such Class 9 Claim shall become an Allowed Claim determined by Final Order that is no longer subject to appeal or other review. In the event of a Class 9 Rejection, the Holders of Class 9 Claims shall receive no Plan Distributions or any other property under the Plan.

(c)     *Impairment and Voting*. Class 9 is Impaired. The Holders of Claims in Class 9 are entitled to vote to accept or reject the Plan.

4.10    Equity Interests (Class 10).

(a)    *Classification*.  Class 10 consists of all Equity Interests.

(b)    *Treatment*.    All Equity Interests shall be cancelled and extinguished, and shall be of no further force and effect, without further notice, approval, or action of any Person or the Court as of the Effective Date or the earliest date possible after Confirmation, whether surrendered for cancellation or otherwise, and there shall be no distribution to Holders of Equity Interests on account of such Equity Interests.

(c)    *Impairment and Voting*.  Class 10 is Impaired.  The Holders of Equity Interests in Class 10 are conclusively presumed to have rejected the Plan pursuant to Section 1126(g) and accordingly are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

5.1    Class Acceptance Requirement.  Pursuant to Section 1126(c), and except as otherwise provided in Section 1126(e), an Impaired Class of Claims shall have accepted the Plan if it is accepted by at least two thirds (2/3) in dollar amount and more than one-half (1/2) in number of Holders of the Allowed Claims in such Class that have voted on the Plan.

5.2    Deemed Acceptance by Non-Voting Classes.  If a Class contains Claims eligible to vote and no Holder of a Claim eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

5.3    Elimination of Vacant Classes.  Any Class of Claims or Equity Interests that does not have at least one Holder of an Allowed Claim or Equity Interest or a Claim or Equity Interest at least temporarily Allowed as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to Section 1129(a)(8).

5.4    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.  Because certain Classes are deemed to have rejected the Plan, to the extent necessary Debtor seeks Confirmation of the Plan under Section 1129(b) with respect to such Classes. Subject to Article 14.6 of the Plan, MBL reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any related document in order to satisfy the requirements of Section 1129(b). MBL also reserves the right to request Confirmation of the Plan, as it may be modified, supplemented, or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the Effective Date, all unexpired leases and executory contracts which were entered into prior to the Petition Date will be deemed rejected by Debtor, except for (i) those that have

already been rejected prior to the Effective Date by order of the Court pursuant to a motion to reject under Section 365(a), (ii) those subject to a pending rejection motion under Section 365(a) filed by Debtor as of the Confirmation Date, and (iii) those which have been assumed and assigned, or are in the process of being assigned to and assumed by Transworld pursuant to the TW Sale. Holders of Claims arising as a result of rejection under this Article will have until thirty (30) days after the Effective Date or such earlier date as may have been established by order of the Court within which to file proofs of Claim for rejection damages, or any such Claim will be forever barred.  Rejection shall be deemed to have occurred on the earlier of: (A) the date any leased property was returned to the lessor thereof or was abandoned, or (B) the Petition Date.

Debtor prior to the Effective Date, subject to the consent of MBL, and MBL on behalf of the Reorganized Debtor after the Effective Date shall as a Retained Action have authority to deal with any issues related to Cure Costs as that term is defined in the Transworld PSA and under the TW Sale.

## ARTICLE VII
## MEANS FOR EXECUTION OF THE PLAN

  7.1 <u>Assets of Debtor</u>.  On the Effective Date, pursuant to Sections 1141(b) and (c), and Article 11.1 of the Plan, the Reorganized Debtor shall be owner of all Properties, subject to the provisions of Article 11.1 and the Plan, for purposes of implementation of the Plan.

  7.2 <u>Dissolution of Debtor</u>.  In order to provide for the orderly wind-up of the Estate, and even though Equity Interests shall receive nothing under the Plan, Debtor shall be deemed to continue in existence until such time as (a) a Final Decree has entered, (b) all Plan Distributions have been made, and (c) all of Debtor's affairs have been wound up. At such time Debtor shall be deemed dissolved under applicable law, without further notice to or action of any Entity or the Court.  Reorganized Debtor, through the CRO, shall have authority to effect the filing of documents for the formal dissolution under applicable law of the Debtor as Reorganized Debtor.  Following the Effective Date, Debtor shall not engage in the conduct of any trade or business except to the extent necessary to make Plan Distributions, and preserve assets, if any, for sale, and shall continue to exist solely for the purpose of winding up its affairs pursuant to the Plan, including performing any transition agreement with Transworld.

  7.3 <u>Sources of Cash and Plan Distributions</u>. The funds necessary to enable Debtor to wind-up the business and make Plan Distributions shall be or have been obtained (i) from the operation of the Properties, (ii) by means of the Proven Settlement, (iii) as a result of the replacement of bonds by Transworld as required by the terms of the TW Sale and receipt by the Debtor of all bond funds with the exception of such as are specifically dealt with in the Proven Settlement, (iv) from the TW Sale (all of which is MBL Collateral), and (v) from the collection of Causes of Action and Avoidance Actions, if any (to which MBL reserves rights as regards claiming as its Collateral).

  7.4 <u>Management</u>.  As of the Effective Date, the term of the current manager of Debtor under the Debtor's limited liability company operating agreement shall expire without further action by any Entity or the Court. From Confirmation until dissolved as set forth in Article 7.2 above, Debtor and Reorganized Debtor shall be managed exclusively by the CRO.

7.5     <u>Litigation and Adversary Proceedings</u>.   The Reorganized Debtor shall have the right to commence or continue adversary proceedings or other litigation to enforce any Causes of Action belonging to Debtor, including any Avoidance Actions, subject to the waiver of Avoidance Actions and the release provisions of the Plan. Any recoveries therefrom, after payment of legal fees and expenses associated with such Causes of Action, shall be added to Reorganized Debtor's funds and under the terms of the Plan be MBL Collateral.   After the Effective Date, fees and expenses of prosecuting or continuing adversary proceedings or other litigation shall be paid in Cash by the Reorganized Debtor, but only from of the Wind-Up Amount, and will not be deducted from Plan Distributions made to Holders of Allowed Claims by the Disbursing Agent.   The Reorganized Debtor may, with consent of MBL, retain contingency fee counsel with respect to such adversary proceedings or other litigation, but any expenses shall be paid only from recoveries or the Wind-up Amount.   This Article 7.5 is subject to the provisions of Article 3.1 of the Plan, concerning MBL's standing with respect to objections to Administrative Expense Claims.

## ARTICLE VIII
## PLAN DISTRIBUTIONS

8.1     <u>Plan Distributions</u>.     The Disbursing Agent shall make all Plan Distributions in Cash to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan. The Disbursing Agent shall bear no personal responsibility or liability for any Plan Distributions, for which the Debtor and Reorganized Debtor solely shall be responsible and liable, but shall be responsible for making Plan Distributions as directed by the Reorganized Debtor.

8.2     <u>Disbursing Agent</u>.

(a)     *Powers of Disbursing Agent*.   The Disbursing Agent shall be empowered to: (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable Plan Distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by any order of the Court (including any order issued after the Effective Date), pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)     *Expenses Incurred On or After the Effective Date*.   Except as otherwise ordered by the Court, and subject to the written agreement of the Reorganized Debtor with the consent of MBL, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement Claims (including, without limitation, reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash by the Reorganized Debtor out of the Wind-Up Amount and will not be deducted from Plan Distributions made to Holders of Allowed Claims by the Disbursing Agent. The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Reorganized Debtor and without the need for approval by the Court. If the Disbursing Agent and the Reorganized Debtor are unable to resolve a dispute with respect to the

payment of the Disbursing Agent's fees, costs, and expenses, the Disbursing Agent may elect to submit any such dispute to the Court for resolution.

(c)     *Bond*.   The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court and, in the event that such Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor. Furthermore, any such entity required to give a bond shall notify the Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

(d)     *Cooperation with Disbursing Agent*.   The Reorganized Debtor shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of all Allowed Claims and the identity and addresses of Holders of such Claims, in each case, as set forth in the Debtor's and/or the Reorganized Debtor's books and records. The Reorganized Debtor will cooperate in good faith with the Disbursing Agent to comply with the reporting and withholding requirements outlined in Article 8.14 hereof.

8.3     <u>Allocation of Plan Distributions Between Principal and Interest</u>.   The aggregate consideration to be distributed to the Holders of Allowed Claims under the Plan shall be treated as first satisfying an amount equal to the stated principal amount of the Allowed Claims of such Holders, as determined for federal income tax purposes, and any remaining consideration as satisfying accrued, but unpaid, interest, if any.

8.4     <u>No Postpetition Interest on Claims</u>.   Other than as specifically provided in the Plan, Confirmation Order, or other order of the Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claim, and no Holder of a prepetition Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

8.5     <u>Distribution Record Date</u>.   As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each of the Classes, as maintained by the Debtor, or the Disbursing Agent, shall be deemed closed and there shall be no further changes in the record Holders of any of the Claims after the Distribution Record Date. Neither the Debtor nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. The Debtor and the Reorganized Debtor, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

8.6     <u>Delivery of Plan Distributions</u>.   Subject to the provisions contained in this Article VII, the Disbursing Agent will issue, or cause to be issued, and authenticate, as applicable, all Plan consideration, if any, and subject to Bankruptcy Rule 9010, the Disbursing Agent shall make Plan Distributions at the addresses set forth in the following documents: (i) the proof of Claim, if any, filed by a Holder of an Allowed Claim; (ii) a written notice of address change delivered to Debtor or filed on the docket of the Bankruptcy Case after the date of any related proof of claim; or (iii) at the addresses reflected in Debtor's statements and Bankruptcy

Schedules if no proof of Claim has been filed and Debtor has not received a written notice of change of address.

8.7     Distribution to Holders of Claims in Classes 4, 8, and 9.   On the Distribution Date, the Disbursing Agent shall distribute to each Holder of an Allowed Claim in Classes 4 and 8 the lesser of (i) the Allowed amount of its Claim and (ii) its Pro Rata share of the Class 4 or Class 8 Cap Amount less the Class 4 and Class 8 Disputed Claims Cash Reserve. On the Distribution Date, the Disbursing Agent shall distribute to each Holder of an Allowed Claim in Class 9 the lesser of (iii) the Allowed amount of its Claim and (iv) its Pro Rata share of the General Unsecured Claims Fund amount less the Class 9 Disputed Claims Cash Reserve. Plan Distributions to the Holders of Claims in Classes 4, 8 and 9 are subject to the provisions of Articles 4.4, 4.8, and 4.9 of the Plan.

8.8     Disputed Claim Reserve Distributions.   Upon the completion of the Claims reconciliation process in accordance with the procedures set forth in this Article VIII the Disbursing Agent shall distribute the Class 4, 8, and 9 Disputed Claims Cash Reserve to the Holders of Allowed Class 4, 8, and 9 Claims such that, after giving effect to such distribution, but subject to Article 8.9 below, each Holder of such Allowed Claims shall have received the lesser of (i) the Allowed amount of its Allowed Claim and (ii) its Pro Rata share of the Class 4 Cap Amount, the Class 8 Cap Amount or the General Unsecured Claims Fund, as applicable.

8.9     Disputed Claims; Limitation.  Any Holder of a Disputed Claim in Class 4, 8, or 9 that ultimately becomes an Allowed Claim shall (i) receive no more from the Class 4, Class 8, or Class 9 Disputed Claims Cash Reserve than the amount reserved with respect to such Claim under Article 8.7 above; and (ii) not have recourse to the Debtor, the Reorganized Debtor, or any property transferred pursuant to the Plan (other than, as applicable, its Pro Rata share of the Class 4 Cap Amount, the Class 8 Cap Amount, and the General Unsecured Claims Fund).

8.10    Satisfaction of Claims.   Unless otherwise provided herein, any Plan Distributions to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction, and discharge of such Allowed Claims.

8.11    Manner of Payment Under Plan.  Except as specifically provided herein, at the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check, ACH, or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or the Reorganized Debtor.

8.12    De Minimis Cash Distributions. Neither the Reorganized Debtor nor the Disbursing Agent shall have any obligation to make (but shall not be prohibited from making) a Plan Distribution that is less than $50.00 in Cash.

8.13    No Distribution in Excess of Amount of Allowed Claim.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution of a value in excess of the Allowed amount of such Claim.

8.14    Withholding and Reporting Requirements.  In connection with the Plan and all Plan Distributions hereunder, the Reorganized Debtor shall comply with all withholding

and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtor, Reorganized Debtor, or the Disbursing Agent believe are reasonable and appropriate, including requiring a Holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provisions of the Plan: (i) each Holder of an Allowed Claim that is to receive a Plan Distribution shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations on account of such distribution; and (ii) no distribution shall be required to be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtor for the payment and satisfaction of such tax obligations or has, to the Reorganized Debtor's satisfaction, established an exemption therefrom.

8.15   <u>Unclaimed Property</u>.  Any Cash or property that is payable under the Plan to a Holder of an Allowed Claim will be sent by first class United States Mail, postage prepaid, to the address of the Holder of the Allowed Claim. If any such Cash or property is returned to or by the United States Postal Service undelivered and is not claimed by the Holder of the Allowed Claim within ninety (90) days from the date the distribution was made, it will become Cash or property available for distribution free and clear of any Claim by the holder thereof, and Reorganized Debtor's obligation to make that payment of money or property will be deemed satisfied in full.  None of the Reorganized Debtor, MBL or the Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtor's books and records, the proofs of claim filed against the Debtor, as reflected on the Claims register maintained by the Disbursing Agent, and any change of address received by the Debtor or Reorganized Debtor or filed on the docket of the Bankruptcy Case.  No further distributions shall be made on such Allowed Claim unless and until Reorganized Debtor is notified of a current address by said Holder.  Further, if any check mailed to a Holder of an Allowed Claim is not cashed, deposited or otherwise negotiated within ninety (90) days of its mailing by the Disbursing Agent, the check will be void, the funds on deposit to cover that check will become Cash available for distribution free and clear of any claim of such Holder, and Reorganized Debtor's obligation to make the payment represented by that check will be deemed satisfied in full.  All unclaimed property or interests in Plan Distributions hereunder on account of such Claim shall revert to the Reorganized Debtor or the successors or assigns of the Reorganized Debtor subject to the MBL Lien, and any Claim or right of the Holder of such Claim to such property or interest in property shall be discharged and forever barred.

# ARTICLE IX

# PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND EQUITY INTERESTS

9.1   <u>Disputed Claims</u>.  Except insofar as a Claim is Allowed under the Plan, the Debtor, or the Reorganized Debtor as of and after the Effective Date, shall be entitled to object to Claims, with the consent of MBL and subject to the immediately following sentence. MBL shall have exclusive standing and authority to object to Class 4 and Class 8 Claims, but

may upon written notice delegate such authority to the Debtor or Reorganized Debtor. The Reorganized Debtor, through the CRO shall provide MBL with information and such access to personnel as need by MBL, subject to applicable privilege(s), for such objections, if any. No other Entity shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before (i) the one-hundred twentieth (120th) day following the later of (A) the Effective Date and (B) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim, or (ii) such later date as may be fixed by the Court.

The Reorganized Debtor with the consent of MBL, or MBL with respect to Class 4 and Class 8 Claims, may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to Section 502(c), except that neither the Reorganized Debtor nor MBL may request estimation of any non-contingent or liquidated Claim if an objection to such Claim was previously overruled by a Final Order. The Court shall otherwise retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor or MBL, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Notwithstanding Section 502(j), in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated by order of the Court. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court, or, after the Effective Date, without further action by the Court.

9.2   Allowance of Disputed Claims and Payment of Distribution. Upon the Allowance of a Disputed Claim, by either compromise and settlement or by Final Order, the Disbursing Agent shall promptly distribute to the holder of such Allowed Claim the distributions to which such Holder would have been entitled had the Claim been an Allowed Claim as of the Effective Date of the Plan, without interest. The Disbursing Agent shall make future distributions on such Claim consistent with the timing and terms of distribution to other members of the same Class. No holder of a Disputed Claim shall be entitled to recover any distributions made to other Holders of Allowed Claims regardless of any delay in obtaining an order allowing or estimating a Disputed Claim.

9.3   Estimation of Disputed Claims for Voting. Any Disputed Claim may be estimated by the Court at any time for purposes of voting on the Plan.

9.4   Preservation of Claims and Rights to Settle Claims. Except as otherwise provided in the Plan, as of and after the Effective Date, MBL shall have the exclusive right to settle any Disputed Claim that is an Administrative Expense Claim (other than a Professional Administrative Expense Claim), a Class 4 Claim, or a Class 8 Claim without notice to any Entity

or further action of the Court, unless the Allowance by means of settlement of such Claim would reduce Plan Distributions to other Creditors holding Claims of the same Class or nature (in which case notice to such Creditors or Class of Creditors and opportunity for hearing before the Court is required).  The Debtor shall be authorized to settle any Disputed Claim that is a Class 9 Claim only with consent of MBL and only after notice and opportunity for hearing, with such notice to be served upon the Holders of Class 9 Claims.

          9.5    <u>Expenses Incurred On or After the Effective Date Regarding Objections to Claims</u>.  Expenses, including attorneys' fees incurred by the Reorganized Debtor after the Effective Date in connection with objections to Claims, shall be payable out of the Wind-Up Amount.  Expenses, including attorneys' fees incurred by MBL after Confirmation in connection with objections to Claims, shall be payable by MBL and shall not affect the Wind-Up Amount or any Plan Distribution to any Holder.

# ARTICLE X

# CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

          10.1    <u>Conditions Precedent to Confirmation</u>.

          It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied in full or waived in accordance with Article 10.3 of the Plan:

          (a)    the Disclosure Statement, in form and substance acceptable to MBL (shall have been approved by the Court as having adequate information in accordance with Section 1125; and

          (b)    the Confirmation Order, in form and substance acceptable to MBL (in its reasonable discretion), shall have been entered on the docket for the Bankruptcy Case and be in full force and effect.

          10.2    <u>Conditions Precedent to the Effective Date</u>.

          The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions have been satisfied in full or waived in accordance Article 10.3 of the Plan:

          (a)    the Confirmation Date shall have occurred, and the Confirmation Order shall not have been reversed, vacated, stayed, amended, supplemented, or otherwise modified without the consent of MBL, and shall be in full force and effect; and

          (b)    no more than ten (10) calendar days shall have passed after the Confirmation Date.

          10.3    <u>Waiver of Conditions Precedent</u>.

          The conditions precedent in Article 10.2 of the Plan may be waived in writing, in

whole or in part, with the consent of MBL, but without notice to or action by any Entity or the Court.

        10.4    <u>Effect of Non-Occurrence of the Effective Date</u>.

        If the conditions listed in Articles 10.1 and 10.2 are not satisfied or waived in accordance with Article 10.3, then (i) the Confirmation Order shall be of no further force or effect; (ii) the Plan shall be null and void in all respects; (iii) no distributions under the Plan shall be made; (iv) no executory contracts or unexpired leases that were not previously assumed, assumed and assigned, or rejected shall be deemed assumed, assumed and assigned, or rejected by operation of the Plan; (v) the Debtor and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date; and (vi) nothing contained in the Plan or the Disclosure Statement shall (A) be deemed to constitute a waiver or release of (x) any Claims by any Entity as against any Person or Entity or Causes of Action by the Debtor, or (y) any Claims against, or Equity Interests in, the Debtor, (B) prejudice in any manner the rights of the Debtor or any other Entity, or (C) constitute an admission, acknowledgment, offer, or undertaking by the Debtor or any Entity or Person in any respect.

## ARTICLE XI

## EFFECT OF CONFIRMATION

        11.1    <u>Vesting of Assets of Debtor; Continued Corporate Existence</u>.  On the Confirmation Date all assets of Debtor, property of the Estate, and the Properties (including without limitation the Sale Proceeds and the right to investigate, prosecute, and litigate all Causes of Action) (collectively "<u>Vested Property</u>"), shall vest in Debtor subject to the occurrence of the Effective Date, and as of the occurrence of the Effective Date the Vested Property shall be vested in the Reorganized Debtor, pursuant to Sections 1141(b) and 1141(c) and the Plan, free and clear of all Claims, charges and other interests of creditors, Equity Interests and all Liens securing any Claims and Equity Interests, except the MBL Lien and as may be otherwise provided expressly in the Plan.  Except as otherwise provided in the Plan or pursuant to actions taken in connection with, and authorized under, the Plan, the Debtor shall continue to exist on and after the Confirmation Date until the Effective Date, and thereafter the Reorganized Debtor shall continue to exist as a separate legal entity with all of the powers available to such legal entity under applicable law, subject to the terms of the Plan, without prejudice to any right to alter or terminate such existence  in accordance with the Plan and as necessary, applicable law, all subject to Article 11.2 of the Plan.  The CRO shall have the exclusive authority to act on behalf of Debtor on and after the Confirmation Date and the Reorganized Debtor on and after the Effective Date in all respects, including without limitation in connection with the dissolution provisions of Article 11.2 of the Plan.  Notwithstanding anything to the contrary, including the Debtor's operating agreement or any applicable non-bankruptcy law, as of the Confirmation Date Soliz shall be deemed to have withdrawn as manager of the Debtor and shall have no further obligations or duties with respect to the Debtor or Reorganized Debtor.

        11.2    <u>Dissolution of Reorganized Debtor</u>.  The Debtor shall be deemed to continue in existence as Reorganized Debtor until the date that is the later of the date on which (i) a Final Decree is entered, (ii) all Plan Distributions have been made, and (iii) all Debtor's

affairs have been wound up. At such time, Debtor and Reorganized Debtor shall be deemed dissolved without further action of or notice to any Entity or the Court.  Following the Effective Date, Reorganized Debtor shall not engage in the conduct of any trade or business except to the extent necessary to make Plan Distributions, and preserve assets, if any, for administration in accordance with the Plan, and shall continue to exist solely for the purpose of winding up its affairs pursuant to the Plan, including the performing any transition agreement with Transworld or other obligations, if any, under the terms of the TW Sale.

        11.3   <u>Binding Effect</u>.  Subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, on and after the Confirmation Date the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any Holder of a Claim against, or Equity Interest in, the Debtor, and such Holder's respective successors and assigns, (whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a Plan Distribution under the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property or rights under the Plan (if any), and any and all non-Debtor counterparties to executory contracts, unexpired leases, and any other prepetition agreements. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has voted on the Plan.

        **11.4**   **<u>Releases by the Debtor</u>.  Pursuant to Section 1123(b) and Bankruptcy Rule 9019, and to the maximum extent allowed by applicable law, upon the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in its individual capacity and as debtor in possession and on behalf of the Estate, and the Reorganized Debtor, in each case on behalf of themselves and their respective successors, assigns, and representatives ("Debtor Parties"), and any and all other Entities who may purport to assert any claim or cause of action, directly or derivatively, by, through, for, or because of any of the foregoing Debtor Parties, shall be deemed forever to release, waive, and discharge the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, causes of action, Causes of Action, and liabilities whatsoever, including any Avoidance Action or otherwise and any derivative claims asserted or assertable on behalf of the Debtor Parties, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws or laws of any other jurisdiction or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor Parties or the Bankruptcy Case; (ii) any investment by any Released Party in the Debtor or the purchase, sale, transfer, or rescission of the purchase, sale, or transfer of any security, asset, right, or interest of the Debtor or the Reorganized Debtor; (iii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor, or any equity investment in the Debtor (including, without limitation, any action or omission of any Released Party with respect to the acquisition, holding, voting, or disposition of such investment); (iv) any Released Party in any such Released Party's capacity as an officer, director, direct or indirect sponsor, affiliate,**

member, manager, shareholder, employee, or agent of, or advisor to, the Debtor; (v) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan; (vi) the business or contractual arrangements between the Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement); (vii) the restructuring of Claims and Equity Interests before or during the Bankruptcy Case, and the solicitation of votes with respect to the Plan; and (viii) the negotiation, formulation, preparation, entry into, or dissemination of the Plan, the Disclosure Statement, or any agreements, instruments, or other documents relating to any of the foregoing. The Reorganized Debtor shall be bound, to the same extent the Debtor is bound, by the releases and discharges set forth above. Notwithstanding anything contained herein to the contrary, the foregoing release does not release acts of actual fraud, gross negligence, or willful misconduct or any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan. For the avoidance of doubt, each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except if such contract or unexpired lease has  been assigned to Transworld, such contract or lease is modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption, or applicable law.

        **11.5**    **Releases by Holders of Claims and Other Entities**. **Upon the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan, the Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, and the agreement of MBL to the use of the MBL Collateral for Plan Distributions in accordance with the Plan, shall be deemed forever to release, waive, and discharge the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, causes of action, Causes of Action, and liabilities whatsoever, including any Avoidance Actions and any derivative claims asserted or assertable on behalf of the Debtor Parties, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws or laws of any other jurisdiction or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor or the Bankruptcy Case; (ii) any investment by any Released Party in any of the Debtor or the purchase, sale, transfer, or rescission of the purchase, sale, or transfer of any security, asset, right, or interest of the Debtor or the Reorganized Debtor; (iii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor, or any equity investment in the Debtor (including, without limitation, any action or omission of any Released Party with respect to the acquisition, holding, voting, or disposition of any such investment); (iv) any Released Party in any such Released Party's capacity as an officer, director, direct or indirect sponsor, affiliate, shareholder, member, manager, employee, or agent of, or advisor to, the Debtor; (v) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan; (vi) the business or contractual arrangements between the**

Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement); (vii) the restructuring of Claims and Equity Interests before or during the Bankruptcy Case, and the solicitation of votes with respect to the Plan; and (viii) the negotiation, formulation, preparation, entry into, or dissemination of the Plan, the Disclosure Statement, or any agreements, instruments, or other documents relating to any of the foregoing ("Released Claims"). Notwithstanding anything contained herein to the contrary, the foregoing release does not release acts of actual fraud, gross negligence, or willful misconduct or any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan. For the avoidance of doubt, each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor(s) in accordance with its terms, except if such contract or unexpired lease has been assigned to Transworld, such contract or lease is modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption, or applicable law.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Articles 11.4 and 11.5 of the Plan, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Court's finding that each release described in Articles 11.4 and 11.5 is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Released Claims; (ii) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any Released Claim, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

11.6    Exculpation and Limitation of Liability.  .   The Released Parties shall not have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or Equity Interest, or any other party in interest in the Bankruptcy Case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, formulation, negotiation, preparation, dissemination, confirmation, solicitation, implementation, or administration of the Plan, the Disclosure Statement, any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other pre- or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor or confirming or consummating the Plan; provided, however, that the foregoing provisions of this Article 11. 6 shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence and shall not affect the right of any Holder of a Claim or Equity Interest, or any other Entity to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan. Without limiting the generality of the foregoing, the Debtor and the Debtor's direct or indirect affiliates, managed accounts and funds, CRO, officers, directors, principals,

direct or indirect sponsors, shareholders, partners, employees, members, managers, members of boards of managers, advisory board members, advisors, attorneys, financial advisors, accountants, investment bankers, agents and other professionals (whether current or former, in each case, in his, her, or its capacity as such) shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The exculpated parties under this Article 11.6 have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpating parties from liability. This provision is not intended to expand or limit the scope of Section 1125(e) and other applicable law, except to the extent specifically provided herein upon the consensual actions of Entities provided for in the Plan.

   11.7 <u>Injunction</u>.

     (a) *General*.  All Persons or Entities who have held, hold, or may hold Claims or Equity Interests (other than Claims that are reinstated under the Plan), and all other parties in interest in the Bankruptcy Case, along with their respective current and former employees, agents, officers, directors, shareholders, members, managers, principals, and direct and indirect affiliates, are permanently enjoined, from and after the Effective Date, from, in respect of any Released Claim, or Claim, (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against the Released Parties, the Debtor, or the Reorganized Debtor, the Debtor Parties or in respect of any Released Claim or Claim; (ii) enforcing, levying, attaching, collecting, or otherwise recovering on account of any Released Claim or Claim by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against the Released Parties, the Debtor, or the Reorganized Debtor; (iii) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of any Released Claim or Claim against the Released Parties, the Debtor, or the Reorganized Debtor; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from the Released Parties, the Debtor, or the Reorganized Debtor, or against the property or interests in property of the Debtor or Reorganized Debtor, on account of any Released Claim, Claim, or Equity Interests; or (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Released Claim or Claim; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases, and other agreements and documents delivered under or in connection with the Plan.

     (b) *Injunction Against Interference With the Plan*.  Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests and their respective

**current and former employees, agents, officers, directors, shareholders, members, managers, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of a Claim or an Allowed Claim, by accepting, or being eligible to accept, Plan Distributions on account of such Claim under the Plan, and the Holders of Equity Interests, shall be deemed to have consented to the injunction provisions set forth in this Article 11.7 of the Plan.**

      11.8   <u>Term of Bankruptcy Injunction or Stays</u>.   All injunctions or stays (excluding any injunctions or stays contained in the Plan or the Confirmation Order) in effect in the Bankruptcy Case under Sections 105 or 362, or any order of the Court or otherwise, and in existence as of the Confirmation Date, shall remain in full force and effect until the date of the Final Decree.

      11.9   <u>Termination of Subordination Rights and Settlement of Related Claims</u>. The classification and manner of satisfying all Claims and Equity Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, Section 510, or otherwise. All subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Plan Distribution shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, Plan Distributions to Holders of Allowed Claims shall not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

      11.10   <u>Waiver of Actions Arising Under Chapter 5 of the Bankruptcy Code</u>. Without limiting any other applicable provisions of, or releases contained in, the Plan, but subject to the proviso of this sentence, each of the Debtor, the Reorganized Debtor, their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the Debtor Parties, hereby irrevocably and unconditionally release, waive, and discharge any and all Avoidance Actions for all purposes; provided, however, that no such Avoidance Action shall be waived pursuant to this Article 11.10 or otherwise to the extent (a) such Avoidance Action, if successful, would result in the disallowance of any Claim against the Debtor, in whole or in part, pursuant to Section 502(d), (b) such Avoidance Action could be maintained against a Holder that is a Class 4, 8 or 9 Objector or that votes to reject the Plan, (c) such Avoidance Action is against a Holder that is not a Releasing Party, or (d) such Avoidance Action is against the Holder of an Equity Interest who objects to Confirmation of the Plan.  For the avoidance of doubt, none of the Avoidance Actions waived pursuant to this Article 11.10 shall constitute Retained Actions.

      11.1   <u>Retained Actions</u>.   As of the Effective Date the Reorganized Debtor, in accordance with Section 1123(b) and with the consent of MBL, shall retain and, with the consent of MBL, may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss all claims, rights, Causes of Action, suits, and proceedings, including without limitation the Retained Headwaters/DTE Actions (as defined below) (collectively, the "<u>Retained Actions</u>"), whether at law or in equity, whether known or unknown, that the Debtor or its Estate may hold

against any Entity, other than Released Claims or Avoidance Actions waived under the Plan, without notice to any Entity or the approval of the Court. For the avoidance of doubt Retained actions shall include any and all claims, rights, Causes of Action, suits, and proceedings against or as exist in favor of the Debtor and/or MBL against Headwaters and/or DTE and/or Kutner Brinen, P.C., and/or DIMES Energy – Rockies, LLC, and their respective current and former employees, agents, officers, directors, shareholders, members, managers, principals, direct and indirect affiliates (including specifically, without limitation, (collectively with Headwaters and DTE, the "Headwaters/DTE Parties"), including without limitation such claims, rights, Causes of Action, suits, and proceedings against any of the Headwaters/DTE Parties arising in relation to and for (i) damages related to each and every version of any asset purchase agreement executed by Headwaters and the Debtor caused by the bad faith conduct in connection therewith, (ii) the bad faith conduct within proceedings before the Court seeking approval of a sale of Debtor's Oil and Gas Properties to Headwaters, (iii) breach, including claims for willful, bad faith breach of the *Third Amended and Restated Asset Purchase Agreement* approved by the Court, (iv) fraudulent inducement with respect to items (i) through (iii) immediately above, (v) bad faith and vexatious proceedings and litigation within the Bankruptcy Case before the Court, and (vi) any and all other claims, rights, Causes of Action, suits, and proceedings against any of the Headwaters/DTE Parties under applicable non-bankruptcy or bankruptcy law ("Retained Headwaters/DTE Actions"). MBL shall have standing to pursue, on behalf of the Reorganized Debtor, the Retained Actions, including without limitation, the Retained Headwaters/DTE Actions. With the consent of MBL, the Reorganized Debtor or its successor(s) may pursue such Retained Actions, as appropriate, in accordance with the best interests of the Reorganized Debtor or its successor(s) that hold such rights. Without the written consent of MBL the Reorganized Debtor shall only have access to the Wind-Up Amount with which to pay the expenses of prosecuting Retained Actions.

11.2    No Discharge.  Section 1141(d)(3) provides that confirmation of a plan will not discharge a debtor if the plan provides for the liquidation of all or substantially all property of the estate, the debtor does not engage in business after consummation of the plan, and the debtor would be denied a discharge under Section 727(a). If Section 1141(d)(3) applies to Debtor, Debtor will not receive a discharge.

## ARTICLE XII
## GENERAL PROVISIONS

12.1    Amendments and Modifications.  MBL may propose amendments or modifications of the Plan at any time prior to entry of the Confirmation Order. Any provisions that the Court may determine which render the Plan unconfirmable may be severed or altered at the option of MBL. After entry of the Confirmation Order, MBL may, with approval of the Court, and so long as it does not materially and adversely affect a Claim Holder, remedy any defect or omission, or reconcile inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. Further, nothing contained in this Article shall limit MBL's ability to modify the Plan pursuant to Section 1127.

12.2    Reservation of Rights/Preservation of Causes of Action.  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Court shall enter

the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by Debtor or MBL with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of Debtor or MBL with respect to the holders of Claims or Equity Interests, whether prepetition or postpetition, prior to the Effective Date. Unless a claim or Cause of Action against a Claim or Equity Interest Holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, Debtor and MBL expressly reserve such claim or Cause of Action for later adjudication by MBL on behalf of the Reorganized Debtor or Reorganized Debtor with the consent of MBL, and therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims or causes of action have been expressly waived, relinquished, released, compromised, or settled in the Plan or a Final Order. In addition, Debtor expressly reserves the right to pursue or adopt any claims or Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which Debtor is a defendant or an interested party, against any entity, including the plaintiffs or co-defendants in such lawsuits.  Any Entity to whom Debtor has incurred an obligation (whether on account of services, purchase, or sale of goods or otherwise), or who has received services from Debtor or a transfer of Cash or property of Debtor, or who has transacted business with Debtor, or leased equipment or property from Debtor should assume that such obligation, transfer, or transaction may be reviewed by Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore expressly waived, relinquished, released, compromised, or settled, be the subject of an action after the Effective Date, whether or not (i) a proof of claim was filed against Debtor in this case; (ii) Debtor, Reorganized Debtor, or MBL has objected to such proof of claim; (iii) a Claim was included in the Bankruptcy Schedules; or (iv) such scheduled Claim has been objected to by Debtor, Reorganized Debtor, or MBL, or has been identified by any such party as disputed, contingent, or unliquidated.

## ARTICLE XIII

## RETENTION OF JURISDICTION

13.1    Pursuant to Sections 105(c) and 1142, to the fullest extent permitted by law, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or out of, or related to, the Bankruptcy Case, the Plan, or the Confirmation Order, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Allowance or priority of Claims or Equity Interests;

(b)    resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is

party to or with respect to which the Debtor or Reorganized Debtor may be liable, and hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

(c)     determine any and all motions, adversary proceedings, applications, contested matters, or other litigated matters pending on the Effective Date;

(d)     ensure that Plan Distributions to Holders of Allowed Claims are accomplished pursuant to the terms of the Plan;

(e)     adjudicate any and all disputes arising from or relating to Plan Distributions;

(f)     enter, implement, or enforce such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

(g)     enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(h)     issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Court;

(i)     modify the Plan before or after the Effective Date under Section 1127 or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(j)     hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 330, 331, and 503(b) incurred prior to the Effective Date;

(k)     hear and determine any rights, claims, or Causes of Action held or reserved by, or accruing to, the Debtor or the Reorganized Debtor pursuant to the Plan, the Bankruptcy Code, the Confirmation Order, or any other applicable law, including without limitation, the Retained Actions;

(l)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Bankruptcy Case;

(m)     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions contemplated thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing, or the effect of the Plan under any agreement to which the Debtor, the Reorganized Debtor or any affiliate thereof is a party;

(n)     hear and determine any issue for which the Plan or a related document requires a Final Order of the Court;

(o)     issue such orders as may be necessary or appropriate to aid in execution of the Plan or to maintain the integrity of the Plan following consummation, to the extent authorized by Section 1142;

(p)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(q)     hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146;

(r)     enter and enforce any order for the sale or transfer of property pursuant to Sections 363, 1123, or 1146(a);

(s)     hear and determine all disputes involving the existence, scope, and nature of the discharges, releases, or injunctions granted under the Plan and the Bankruptcy Code;

(t)     hear and determine all disputes involving or in any manner implicating the exculpation, release, injunction or indemnification provisions contained in the Plan;

(u)     hear and determine any matters arising under or related to Sections 1141 and 1145;

(v)     recover all Properties of the Debtor and property of the Estate, wherever located;

(w)     enter a Final Decree closing the Bankruptcy Case; and

(x)     hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

14.1   <u>Payment of Statutory Fees</u>.  On the Effective Date, all Quarterly UST Fees due and payable pursuant to Section 1930 of title 28 of the U.S. Code due as of that date shall be

paid by the Debtor. Following the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall file with the Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each of the Debtor and Reorganized Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of the Bankruptcy Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The Reorganized Debtor shall be entitled to an order administratively closing the Bankruptcy Case on or after the Effective Date pending the filing of a motion seeking a Final Decree and order closing this Bankruptcy Case.

      14.2   <u>Incentive and Severance Compensation</u>.  As of the Effective Date the Incentive and Severance Compensation shall be approved without further notice to or further action by any Entity or the Court and shall be paid by the Reorganized Debtor with Cash that is MBL Collateral to the CRO as follows:  (a) 80% shall be paid within one (1) Business Day after the Effective Date; and (b) 20% shall be paid immediately prior to dissolution of the Debtor. Any further compensation to the CRO paid for the winding up of the affairs of the Debtor and Reorganized Debtor shall, after the Effective Date be paid out of the Wind-Up Amount and only after approval of MBL, unless otherwise agreed by MBL.  Any such agreement shall not affect the Plan Distributions to the Holders of Claims under the Plan.

      14.3   <u>Confirmation Order Effective Upon Entry</u>.  The Confirmation Order shall be effective immediately upon entry by the Court, and the stay of effectiveness provided for by Bankruptcy Rule 3020 shall be abrogated as of entry of the Confirmation Order.

      14.4   <u>Substantial Consummation</u>.   On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b).

      14.5   <u>Expedited Determination of Postpetition Taxes</u>.  MBL on behalf of the Reorganized Debtor shall be authorized to request an expedited determination under Section 505(b) for all tax returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

      14.6   <u>Modification and Amendments</u>.   Subject to the requirements of Section 1127, Rule 3019 of the Bankruptcy Rules, and, to the extent applicable, Sections 1122, 1123, and 1125, MBL, may alter, amend, or modify the Plan at any time prior to the Effective Date.  Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as supplemented, amended, or modified, if the proposed supplement, amendment, or modification complies with the requirements of this Article 14.6 and does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder; *provided*, *however*, that any Holders of Claims or Equity Interests that were deemed to accept the Plan because such Claims or Equity Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims or Equity Interests continue to be Unimpaired.

      Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

14.7    <u>Additional Documents</u>. On or before the Effective Date, the Debtor, with the consent of MBL, may enter into any agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all Holders of Allowed Claims receiving Plan Distributions and all other parties in interest may, from time to time, and with the consent of MBL prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

14.8    <u>Effectuating Documents and Further Transactions</u>.  On and after the Effective Date, the Reorganized Debtor through the CRO and with the consent of MBL is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents from or notices to any entity or the Court, except for those expressly required pursuant to the Plan.

14.9    <u>Entire Agreement</u>. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

14.10   <u>Revocation or Withdrawal of the Plan</u>. MBL reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If MBL takes such action, the Plan shall be deemed null and void in its entirety and of no force or effect, and any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void.  In such event, nothing contained in the Plan shall (i) constitute or be deemed to be a waiver or release of any claim against or by, or Equity Interest in the Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtor or any Entity in further proceedings involving the Debtor; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

14.11   <u>Severability</u>. If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, or is denied by the Court, then, at the request of MBL, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, with the exception only of those terms held by the Court to be invalid, void, or unenforceable, or denied by the Court is (i) valid and

enforceable pursuant to its terms; (ii) integral to the Plan; and (iii) non-severable and mutually dependent.

14.12   Solicitation.   Upon entry of the Confirmation Order, MBL shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, Section 1125(e), and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation. MBL, and each of its respective principals, members, partners, officers, directors, employees, agents, managers, representatives, advisors, attorneys, accountants, and professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of any securities offered or sold under the Plan, and therefore, are not, and on account of such offer, issuance, sale, solicitation, or purchase shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of any securities offered or sold under the Plan.

14.13   Governing Law.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Colorado, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or entity governance matters relating to the Debtor or the Reorganized Debtor shall be governed by the laws of the state of incorporation or organization of the Debtor or the Reorganized Debtor.

14.14   Successors and Assigns.   The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign, affiliate, officer, director, shareholder, member, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Person or Entity.

14.15   Closing of Bankruptcy Case.   MBL shall, as promptly as practicable after the full administration of the Bankruptcy Case, file with the Court all documents required by Bankruptcy Rule 3022, and any applicable order of the Court to close the Bankruptcy Case.

14.16   Document Retention.   On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with the Debtor's current document retention policy, as may be amended or supplemented by the Reorganized Debtor without notice to or further action of any Entity or the Court.

14.17   Conflicts.   In the event of any conflict between the terms and provisions in the Plan on the one hand and the terms and provisions in the Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements,

or amendments to any of the foregoing), on the other hand, the Plan shall govern and control; provided, however, that, notwithstanding anything herein to the contrary, in the event of a conflict between the Confirmation Order, on the one hand, and the Plan, on the other hand, the Confirmation Order shall govern and control in all respects.

      14.18  <u>Service of Documents</u>.

      (a)    After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to:

the Debtor or the Reorganized Debtor, shall be served on:

> Kings Peak Energy, LLC
> c/o F. Robert Tiddens, CRO
> Kings Peak Energy LLC
> 1660 Lincoln Street, Suite 2100
> Denver, CO  80264
> Phone:  (303)-204-7814 (Direct)
> Email:  rtiddens1@gmail.com
> *with a copy to (which shall not constitute notice)*
>
> Onsager | Fletcher | Johnson
> Christian C. Onsager
> Alice White
> 1801 Broadway, Suite 900
> Denver, Colorado 80202
> Phone: (303) 512-1123
> Fax: (303) 512-1129
> consager@OFJlaw.com
> awhite@ofjlaw.com

Macquarie Bank Limited shall be served on:

> Macquarie Bank Limited, Houston Representative Office
> c/o James Jordan
> 500 Dallas, Level 31
> Houston, Texas 77002
> Phone: (713) 275 6213
> Email: james.jordan@macquarie.com
>
> *with a copy to (which shall not constitute notice)*
>
> Kelly Hart & Pitre
> Louis M. Phillips
> One American Place
> 301 Main Street, Suite 1600
> Baton Rouge, LA 70801-19

Phone: (225) 381-9643
Fax: (225) 336-9763
Email: louis.phillips@kellyhart.com

(b)     After the Effective Date, MBL, or the Reorganized Debtor with the consent of MBL, shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

14.19   <u>Deemed Acts</u>.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

14.20   <u>Waiver or Estoppel</u>.  Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including, without limitation, the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court prior to the Confirmation Date.

SIGNATURES ON FOLLOWING PAGE

Dated: February 12, 2019.

MACQUARIE BANK LTD.

*/s/ Ben Mossemenear*
Division Director

and

*/s/ Lynette Ladhams*
Associate Director

**MARKUS WILLIAMS**
**YOUNG & ZIMMERMANN LLC**

*/s/ James T. Markus*
James T. Markus, #25065
Matthew T. Faga, #41132
Donald D. Allen, #10340
1700 Lincoln Street, Suite 4550
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email jmarkus@markuswilliams.com

And

KELLY HART & PITRE
*/s/ Louis M. Phillips*
Louis M. Phillips (La. Bar No. 10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-19
Phone: (225) 381-9643
Fax: (225) 336-9763
Email: louis.phillips@kellyhart.com

*Counsel for Macquarie Bank Limited*

**LIST OF EXHIBITS**

Exhibit A             Field Vendor Claims

Exhibit B             Field Vendor Lien Claims

Exhibit C             Gas Proceeds Claims

Exhibit D             General Unsecured Claims

Exhibit E             Suspense Fund Claims

# EXHIBIT A

## Field Vendor Claims

| Name of Creditor | Amount |
|---|---|
| AB Services Inc | $ 4,669.31 |
| ArchRock | $ 215,156.42 |
| C Bar C Construction Enterprises | $ 6,800.00 |
| Civeo USA LLC | $ 2,388.75 |
| Codale Electric Supply | $ 310.25 |
| CSI Compressor | $ 15,000.00 |
| D&B Services Inc  (bought by Transworld) | $ 5,057.50 |
| D&D Swabbing LLC | $ 5,459.25 |
| DJ Oilfield Services | $ 40,716.54 |
| Dustbuster Enterprises Inc | $ 12,387.44 |
| Ferrill Gas | $ 2,529.99 |
| GHD Services Inc. | $ 42,346.68 |
| H&H Versatile Services Inc | $ 6,187.50 |
| J&D Contract Services | $ 67,027.91 |
| Lance Neeff | $ 1,200.00 |
| Laramide Geosciences LLC | $ 7,597.00 |
| Loger Water Service Inc | $ 33,053.58 |
| NEC Electric Inc | $ 10,758.75 |
| Paragon Automation Inc | $ 13,916.15 |
| Pilot Thomas Logistics | $ 17,371.45 |
| Production Optimization Inc | $ 750.00 |
| Western Chemical | $ 29,701.63 |
| **TOTAL** | **$ 540,386.10** |

# EXHIBIT B

## Field Vendor Lien Claims

| Name of Creditor | Amounts |
|---|---|
| AB Services Inc | $   62,640.76 |
| Big Pee Industries Inc | $     6,415.00 |
| Industrial Horsepower Inc | $   24,230.24 |
| J&D Contract Services | $   27,570.62 |
| Loger Water Service Inc | $ 111,447.01 |
| NEC Electric Inc | $   33,481.25 |
| Perry Bros.Oilfield Services Inc | $ 298,919.25 |
| Terra Firma Grading LLC | $   31,920.00 |
| **TOTAL** | **$ 596,624.13** |

**EXHIBIT C**

**Gas Proceeds Claims**

| Item Description | USD | USD |
|---|---|---|
| 9621 - United Energy Trading LLC Gross Gas Sales | 73,062.51 | |
| 9626 - Gas Marketing Charge | (6,843.85) | |
| Net Gas Revenue Received into KPE call account | | 66,218.66 |
| | | |
| 9622 - Gas Production Tax - WY | (3,471.83) | |
| 9623 - Gas Ad Valorem Tax - to TOC | (3,471.83) | |
| 9624 - Gas Conservation Tax - WY | (28.93) | |
| Suspense to TOC | (366.05) | |
| Owner Checks (71) incl ONRR & Wy State Land | (12,328.19) | |
| Total Class 6 Gas Proceeds Claim | | (19,666.83) |
| | | |
| Kings Peak Net Gas Revenue | | 46,551.83 |

**EXHIBIT D**

**General Unsecured Claims**

| Name of Creditor | POC No. or Scheduled | Amount |
|---|---|---|
| Bay Capital Corporation | 18 | $325,000.00 |
| Brandon Standifird | 19 | $23,044.50 |
| BWDC, LLC | 12 | $57,146.34 |
| Proven | 23 | $75,000.00 |
| Steptoe & Johnson | 20 | $191,081.49 |
| Wyoming Dept. of Environmental Quality | S | $1,595.00 |
| **Total** | | **$672,867.33** |

**EXHIBIT E**

**Suspense Fund Claims**

| Name of Creditor | POC No. or Scheduled | Amount |
|---|---|---|
| A-8 Investment Company | S | $63.64 |
| Alan Schottenstein | S | $35.49 |
| Alpha Development Corp | S | $17,616.54 |
| Bellport Oil & Gas Inc. | S | $16.67 |
| Bill and Pat Clayton | S | $5.72 |
| Billie McWilliams Estate | S | $1,416.92 |
| BMNW Resources | S | $16.64 |
| Dean Mohr | S | $58.37 |
| Elizabeth G. Rainey | S | $74.73 |
| Elizabeth M. Smythe1980 | S | $45.93 |
| Gerald Hagerman | S | $87.56 |
| Helen D. McVey | S | $19.08 |
| Hudson Family Partnership | S | $16.05 |
| James Earl Ghormley | S | $193.74 |
| Joan B. Reep | S | $77.30 |
| K&M Oil Company | S | $11.49 |
| KAB Acquisition LLLP-VI | S | $45,377.93 |
| Kenneth G. Leis | S | $2,031.30 |
| Leslie Avedisian | S | $1,035.43 |
| Maurice W. Brown Oil & Gas LLC | S | $5,572.71 |
| Micheal L. Pinnell | S | $63.64 |
| Nugget Trust | S | $2,206.46 |
| Pintail Production Company Inc. | S | $320.08 |
| Pride Energy Company | S | $641.73 |
| Robert A. McClintock | S | $11.49 |
| Robert D. Stolzenbach | S | $58.34 |
| Robert Kruse | S | $320.08 |
| Robert M Jenney 2004 Trust FBO C. Jenney | S | $487.30 |
| Robert M Jenney 2004 Trust FBO S. Bushman | S | $1,461.89 |
| Robert M. Jenney 2004 Trust FBO P. Taft | S | $487.29 |
| Sammie Louise Inman  Jennifer Pedersen AIF | S | $1,248.68 |
| Steve Brown | S | $17.21 |
| Sun Operating Limited Partners | S | $28.34 |
| Thomas Kirchen Jr. | S | $838.42 |
| Trent T. Novotny | S | $386.01 |
| Trigg Venture Nominee Inc. | S | $1,420.38 |
| Viking Exploration | S | $1,092.38 |
| W Devier Pierson | S | $10.35 |
| W E West Rocable Trust | S | $63.41 |
| Walter James Brown & Kathryn Sue Justice Family Trust | S | $533.20 |
| Williams Oil & Gas LLC | S | $34.63 |
| **Total** | | **$85,504.55** |